UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DALE WAMSLEY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:17-CV-2731-ERW<br>) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security | )<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Dale Wamsley ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF 19) and Defendant has filed a brief in support of the Answer (ECF 24).

### I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI under Titles II and XVI of the Social Security Act in March 2014 (Tr. 150-157). Plaintiff was initially denied relief on August 11, 2014, and on November 9, 2014, he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 103-107, 145). After a hearing, by a decision dated October 5, 2016, the ALJ found Plaintiff was not disabled (Tr. 10-22). Plaintiff filed a *Request for Review of Hearing Decision* on November 9, 2016 (Tr. 145-149). On September 27, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Plaintiff appealed to the United States District

1

Court for the Eastern District of Missouri on November 17, 2017 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, and Plaintiff has not engaged in substantial gainful activity since July 14, 2013, the amended alleged onset date of his disability (Tr. 12).

The ALJ found Plaintiff has the severe impairments of disorders of the spine, chronic obstructive pulmonary disease ("COPD"), asthma, and obesity (Tr. 12). The ALJ also found Plaintiff's non-severe impairments include the mental impairments of anxiety and depression (Tr. 13). Plaintiff's medical records indicated Plaintiff suffered from hypertension, diabetes mellitus, and hepatic lipase[1] but these conditions did not cause more than minimal limitations on basic work activities, and therefore they were not related to Plaintiff's medically determinable impairments (Tr. 13). The ALJ found no impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).

The ALJ conducted a hearing with Plaintiff, and Plaintiff's counsel, on April 21, 2016 (Tr. 27-66). At the hearing, Plaintiff testified he was born in 1965, completed high school, and attending ITT Bailey Tech for a year and a half to learn auto repair (Tr. 32). His past work includes positions with United Carpeting Company, and Mohawk Industries Incorporated (Tr. 32). In these positions, Plaintiff worked in a warehouse on shipping, receiving, loading trucks, and ensuring contractors had the appropriate tools (Tr. 33). He was required to lift approximately 80 pounds, and spend most of the day on his feet (Tr. 34). He was let go from his warehouse

---

[1] Hepatic lipase deficiency is a disorder that affects the body's ability to break down fats (lipids). People with this disorder have increased amounts of certain triglycerides and cholesterol in the blood.

position as a result of a "major" shoulder surgery on his left shoulder in April 2011 (Tr. 34-35). When he returned to work after five months, he had an accident on a forklift and was let go from the position (Tr. 35). Plaintiff sought additional employment but was unable to find work (Tr. 35). In 2013, Plaintiff was in a car accident where he broke all of his ribs on the left side of his body, fractured his sternum, punctured his left lung, and suffered muscle separation on his right leg, which kept him in the hospital for a week (Tr. 35-36).

Plaintiff has diabetes and sometimes experiences symptoms such as blurry vision, feeling sluggish, and tingling in his hands and feet, when his sugars get really high (Tr. 38, 58). Plaintiff also testified he suffers from hypertension and high blood pressure which is controlled with medication (Tr. 39). Plaintiff has a limited range of movement in his shoulders, which prevents him from being able to raise his arms above his head (Tr. 40-41). As a result of this shoulder pain, Plaintiff testified he has trouble sleeping which does not improve with pain medication (Tr. 41). Plaintiff has had shoulder injections, seeking to relieve his shoulder limitations and pain (Tr. 40-41).

Plaintiff also has trouble breathing and has been diagnosed with COPD[2] (Tr. 43). He uses an inhaler as-needed to help with the symptoms (Tr. 43-44). Plaintiff testified he has problems doing normal daily activities (Tr. 44). Doing the dishes or cooking requires a break where Plaintiff has to sit down after standing for approximately ten minutes (Tr. 44-45). Plaintiff has challenges when lifting clothes out of the washer, given the pain in his shoulders and back (Tr. 44). He experiences limited mobility in his neck as well as pain in his back, legs, and shoulders, which makes him "nervous" when driving (Tr. 45). Plaintiff is limited to a maximum of 40 minutes grocery shopping, approximately twice a month (Tr. 45, 47). Showering, bathing, and

---

[2] COPD stands for Chronic Obstructive Pulmonary Disease which is an umbrella term used to describe progressive lung diseases including non-reversible asthma and chronic bronchitis.

getting dressed are difficult, given his limited mobility and pain (Tr. 45-46). Plaintiff is able to do housework such as vacuum and dust (Tr. 49).

Plaintiff can sit for approximately an hour, stand for about thirty minutes, can walk one and half blocks, and can lift and carry up to twenty pounds (Tr. 46-47). He has two sons, one is 24 years old, and one is 13 years old (Tr. 46-47). Both sons live outside Plaintiff's home (Tr. 47). Plaintiff used to play drums and saxophone, but is no longer able to play either instrument (Tr. 50). Plaintiff was prescribed a cane in April 2015, and uses it to help with stability and balance (Tr. 54-55).

Plaintiff had difficulty getting treatment prior to being accepted into Medicaid at the end of 2015 (Tr. 56). Prior to being awarded Medicaid, Plaintiff had neck surgery from a doctor who "basically volunteered to do it for free" (Tr. 57). Plaintiff testified he also experiences difficulty breathing in the cold, has migraine headaches approximately once a month, and suffers from memory problems (Tr. 57-63). Plaintiff does not suffer from insomnia, side effects from his medication, or changes in pain, related to changes in weather (Tr. 57-63).

The vocational expert, Brenda Young, completed an interrogatory on May 11, 2016, stating Plaintiff is unable to perform any past work; however, he is able to work as a parking cashier, small product assembler, and laundromat attendant (Tr. 241-248).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to perform light work, except he requires a work environment which allows him to alternate between sitting and standing and/or walking every hour throughout the work day (Tr. 14). He can reach overhead on the right frequently, and occasional on the left (Tr. 14). Plaintiff can frequently reach, handle, and finger[3],

---
[3] This phrase is used to indicate a person's ability to reach for objects, handle objects, as well as use the fingers for fine activities.

occasionally climb ramps and stairs, but never ladders, ropes or scaffolds (Tr.14). He can occasionally balance, stoop, kneel, crouch but never crawl (Tr. 14). Plaintiff also must avoid all exposure to unprotected heights and concentrated exposure to extreme heat, cold, humidity and vibration (Tr.14). The ALJ found Plaintiff is unable to perform any past relevant work[4] (Tr. 20). The ALJ also found there are jobs which exist in significant numbers in the national economy Plaintiff can perform, including parking casher, small products assembler, and laundromat attendant (Tr.21). Thus, the ALJ's conclusion for Plaintiff was "not disabled" (Tr. 22).

Plaintiff appeals, arguing the decision of the ALJ failed to articulate a legally sufficient rational for his conclusions regarding Plaintiff's RFC; Plaintiff's RFC fails to include any limitations to account for Plaintiff's severe impairments of COPD and asthma; the ALJ erred by not finding Plaintiff's shoulder conditions to be severe impairments; and the ALJ failed to resolve conflicts with the vocational expert's testimony.

**III. LEGAL STANDARD**

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be

---
[4] Plaintiff's past relevant work is as a warehouse worker (Tr. 20).

terminated at step two, only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past to determine if the claimant can perform any past relevant work. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove

disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed, if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough, so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the ALJ's decision, Plaintiff argues, first, the decision of the ALJ failed to articulate a legally sufficient rational for his conclusions regarding Plaintiff's RFC, second, Plaintiff's RFC fails to include any limitations to account for Plaintiff's severe impairments of COPD and asthma, third the ALJ erred by not finding Plaintiff's shoulder conditions to be severe impairments, and fourth, the ALJ failed to resolve conflicts with the vocational expert's testimony.

The Court finds substantial evidence does not support the ALJ's findings regarding the vocational expert's testimony regarding availability of jobs in the national economy, Plaintiff can perform in accordance with his RFC. Accordingly, the ALJ failed to resolve conflicts with the vocational expert's testimony.[5]

In his decision, the ALJ found Plaintiff has the RFC to perform light work, except he requires a work environment which allows him to alternate between sitting and standing and/or walking every hour throughout the work day (Tr. 14). Plaintiff can reach overhead on the right frequently and occasional on the left, as well as frequently reach, handle, and finger (Tr. 14). Plaintiff can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds (Tr. 14). He can occasionally balance[6], stoop, kneel, crouch, but never crawl (Tr. 14). Plaintiff also must

---
[5] The Court finds substantial evidence does not support Plaintiff's fourth argument and will remand. Accordingly, the Court does not find a need to address Plaintiff's first three arguments.
[6] Balance is defined as a person's ability to maintain body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces.

8

avoid all exposure to unprotected heights, and concentrated exposure to extreme heat, cold, humidity and vibration (Tr.14).

Plaintiff argues the ALJ erred by relying on vocational expert ("VE") testimony which was in in conflict with the Dictionary of Occupational Titles ("DOT"), without explanation or justification from the VE. In lieu of live testimony, the VE, Brenda Young, was supplied a list of interrogatories form the ALJ and submitted her responses on May 11, 2016 (Tr. 242-248). The VE opined Plaintiff could perform jobs as a small products assembler[7], parking cashier[8], and laundromat attendant[9].

Plaintiff's attorney submitted additionally interrogatories to the VE on May 25, 2016 (Tr. 256-257). The interrogatories questioned the extent any of the identified jobs would be affected by the use of a cane, and the VE stated the cane would have "no effect on parking cashier. Reduction of laundry attendant by 50%, possible elimination of assembly jobs" (Tr. 256). Another interrogatory questioned the amount of handling, finger, feeling and grasping required by Plaintiff at the identified jobs, to which the VE responded, "grasping is not quantified in DOT. Handling and fingering is frequent for the parking cashier and laundry attendant and constant for the small product assembler. Feeling 'not present' in either job listed" (Tr. 257).

In step five of the ALJ's analysis, the ALJ may rely on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e). Vocational expert testimony should generally be consistent with the Dictionary of Occupational Titles ("DOT"). *See* Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions, SSR 00–4P (S.S.A Dec. 4, 2000). When conflicts arise, an ALJ must resolve conflicts between the testimony and the DOT "by

---

[7] Dictionary of Occupational Titles #739.687-030 (Tr. 244)
[8] Dictionary of Occupational Titles #211.462-010 (Tr. 244)
[9] Dictionary of Occupational Titles # 369.677-010 (Tr. 244)

9

determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information." *Id*. A [vocational expert] must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir.2014). Absent adequate rebuttal, however, [vocational expert] testimony that conflicts with the DOT "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) *citing Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014).

Plaintiff argues, first, small product assembler is a position which complies with the first set of hypotheticals provided to the VE by the ALJ, however, "constant" handling and fingering was required under the DOT for the job of small product assembler. "Constant" handling and fingering is a qualification which requires the Plaintiff to perform more tasks which require handling and fingering, than would be required of Plaintiff in a position which required "frequent" handling and fingering. Plaintiff's RFC indicated he was only capable of "frequent" handling and fingering, not "constant." The ALJ failed to resolve the conflict between the amount of handling and fingering required prior to accepting the VE's testimony[10].

Plaintiff also argues the VE and the ALJ noted the position of laundromat attendant is classified as "medium" work in the DOT, however, Plaintiff's RFC only allows for "light" work positions.

---

[10] Plaintiff also argues the ALJ incorrectly cited to the position of small products assembler by stating the position's DOT number was 739.187-030, a number which does not exist in the DOT. The Courts have "consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir.1987) The incorrect citation to the DOT has no practical outcome on the effect of the case. The correct citation is 739.687-030.

In his RFC, the ALJ noted Plaintiff can "frequently reach, handle, and finger" (Tr. 14). When asked in Plaintiff's follow up interrogatories, the VE stated, "[h]andling and fingering is frequent for the parking cashier and the laundry attendant and constant for the small product assembler" (Tr. 257). Plaintiff correctly notes "constant" is a more burdensome standard than "frequent," and the ALJ fails to remedy this conflict between the VE's testimony and DOT information. The ALJ allocated little weight to the supplemental hypotheticals because "the medical records do not support that hypothetical" (Tr. 21). However, the discrepancy between "constant and "frequent" requirements of fingering and handling was not in response to a hypothetical, but rather the VE answering a specific question regarding the jobs the VE had proposed in response to the first set of interrogatories. The ALJ does not adequately explain discounting the VE's responses to the supplemental interrogatories regarding the requirements of fingering and handling in the position proposed by the VE.

Additionally, the ALJ notes in his opinion the DOT classification of the laundromat attendant is "medium," however, the VE noted the position "only requires light lifting" (Tr. 21). The ALJ's opinion incorrectly states the VE's testimony.

When asked if there were any conflicts between the occupational evidence for the hypothetical and the occupational information contained in the DOT, the VE states, "[l]aundromat attendant classified at medium by DOT. Often only requires light lifting" (Tr. 245). The ALJ failed to resolve this conflict and instead adopted an incorrect summation of the VE's testimony. As a result of the failure to resolve this conflict, there is no indication the position of laundromat attendant proposed by the VE as a position Plaintiff could perform, is a "medium" level position which still falls within Plaintiff's RFC which only permits "light" work. This conflict was never resolved by the ALJ, and accordingly, cannot constitute substantial

11

evidence to support the proposition there are positions available in the national economy for Plaintiff.

Upon review, the Court finds the ALJ's failure to identify and accommodate, or resolve, the conflict between the hypotheticals posed to the VE, and the VE's testimony, and the DOT constitutes error. Because the ALJ did not elicit any testimony from the VE to resolve the conflicts, the VE's testimony is not substantial evidence jobs exist in the national economy which Plaintiff can perform given his RFC.

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole. Although the Court does not make an ultimate determination regarding Plaintiff's disability, the Court finds this case should be reversed and remanded. On remand, the ALJ is directed to reconsider the testimony of the VE and appropriately resolve any conflicts between positions in the national economy which Plaintiff can do given his RFC and the DOT.

**IT IS HEREBY ORDERED** this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 22nd day of March, 2019.

*E. Richard Webber*

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**